**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MIGUEL A. ADAMS, | ) | |
|         Plaintiff, | ) | |
| v. | ) | Case No. CIV-07-979-D |
| | ) | |
| CORPORAL BOUCHARD, D.O. SCHMIDT, | ) | |
| and SHERIFF JOHN WHETSEL, | ) | |
| | ) | |
|         Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his federal constitutional rights. This matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Defendants have filed a Motion to Dismiss/ Motion for Summary Judgment and Brief in Support [Doc. #12]. Plaintiff has responded to the Motion [Doc. #16]. In addition, the Court has received a Special Report [Doc. # 20], and Plaintiff has submitted a response to the Special Report [Doc. #22].

For the reasons set forth below, it is recommended that Defendants' Motion, construed as a motion for summary judgment, be granted in part and denied in part.

**I.      Plaintiff's Claims**

Plaintiff's claims arise out of an incident occurring on June 15, 2007, while incarcerated at the Oklahoma County Detention Center (OCDC). Plaintiff claims that during a cell search, Defendants Bouchard and Schmidt assaulted him. In Count I, Plaintiff claims his life was threatened and he was not treated with respect and dignity. In Count II, Plaintiff

claims Defendants Bouchard and Schmidt used excessive force against him in violation of his Eighth Amendment rights.[1] Plaintiff further claims Defendant Sheriff John Whetsel trained these officers and failed to properly supervise the officers, having knowledge that the officers had engaged in similar wrongful conduct in violation of his Eighth Amendment rights. In Count III of the Complaint, Plaintiff claims Defendant Whetsel failed to investigate his employees after numerous complaints had been made.[2]

Defendants seek dismissal of the Complaint on grounds that Plaintiff has failed to exhaust administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Alternatively, Defendants claim they are entitled to qualified immunity because Plaintiff has failed to allege the violation of a constitutional right. Defendants seek dismissal on grounds that Plaintiff has failed to allege facts sufficient to demonstrate that excessive force was used against him in violation of his Eighth Amendment rights. Defendant Whetsel

---

[1] It is not clear whether Plaintiff was incarcerated under a judgment of conviction and sentence at the time of this incident or whether he was a pretrial detainee. Defendants, however, have not challenged application of the Eighth Amendment as the basis for Plaintiff's excessive force claim. The Court, therefore, proceeds with an Eighth Amendment analysis but notes that if Plaintiff were a pretrial detainee, his claim would be governed by the Fourteenth Amendment. *See Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988) (pretrial detainees are protected from excessive force that amounts to punishment under the Due Process Clause of the Fourteenth Amendment). The same standards apply, however, whether the excessive force claim is brought pursuant to the Eighth Amendment or the Fourteenth Amendment. *See Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999) (the analysis employed to evaluate an excessive force claims, whether it arises under the Eighth or Fourteenth Amendment, is the same).

[2] According to Plaintiff, Defendants Bouchard and Schmidt are no longer employed at OCDC, as Defendant Bouchard was fired and Defendant Schmidt quit. *See* Plaintiff's Response [Doc. #16] at 5; *see also* Plaintiff's Response to Special Report [Doc. #22] at 6. Defendants have not addressed these allegations by Plaintiff.

additionally seeks dismissal of the claims against him on grounds that Plaintiff has not alleged sufficient personal participation by Whetsel in the alleged violation of Plaintiff's Eighth Amendment rights.

## II. Standard of Review – Summary Judgment

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A factual dispute is only "genuine" if the evidence and the inferences drawn therefrom, when viewed in the light most favorable to the nonmoving party, are "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As the Tenth Circuit has held:

> The nonmoving party may not rest upon the mere allegations or denials of [his] pleading. The nonmoving party must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004) (quotation omitted). When applying these standards, however, the Court must be mindful that "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

### III. Analysis

#### A. The PLRA Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a mandatory exhaustion requirement exists for inmates challenging prison conditions in federal court.[3] Defendants have raised the affirmative defense of Plaintiff's failure to exhaust administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a), and have attached materials outside the pleadings in support of this affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 921 (2007) ("[F]ailure to exhaust is an affirmative defense under the PLRA . . . ."). Therefore, Defendants' motion to dismiss is construed as a motion for summary judgment. *See* Fed. R. Civ. P. 56.

When an affirmative defense is raised in a motion for summary judgment, the defendant must demonstrate that "no disputed material fact exists regarding the affirmative defense asserted." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). "If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." *Id.* "If the plaintiff fails to make such a showing, the affirmative

---

[3]Section 1997e(a) states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." *Id.*

A prisoner properly exhausts administrative remedies by completing the administrative review process as defined by the prison grievance system. *Jones v. Bock*, 127 S.Ct. at 922. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*, 127 S.Ct. at 923. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Moreover, "[t]o exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). If, however, prison officials fail to timely respond to a prisoner's grievance or otherwise thwart a prisoner's compliance with the prison's grievance procedures, the prisoner may be deemed to have complied with the exhaustion requirement. *Jernigan*, 304 F.3d at 1032.

### 1.   **The OCDC Grievance Procedure**

Defendants have attached to their Motion two operational policies of the OCDC. *See* Defendants' Motion, Attachments [Doc. #12-3] (Request to Staff) and [Doc. #12-4] (Inmate Grievance Procedure). Pursuant to these procedures, an inmate must first attempt to resolve issues by talking informally with an appropriate employee. *Id.* [Doc. #12-3], ¶ I. If the issue

is not resolved through that communication, the inmate may then submit a Request to Staff. *Id.*, ¶ II. The Request to Staff must be submitted within fifteen calendars days of the incident. *See id.* [Doc. #12-4], ¶ III(B)(3). The Request to Staff must be responded to in writing within five days of receipt. *Id.*, ¶ III(C)(1). If the matter is not resolved informally through the verbal or Request to Staff process, the inmate may then submit an Inmate Grievance Form. *Id.*, ¶ IV. The formal grievance must be submitted within fifteen days of the incident or the receipt of the answer to the Request to Staff. *Id.*, ¶ IV(C). The grievance must be answered and returned to the prisoner within fifteen working days of receipt of the grievance. *Id.*, ¶ V(D)(1). An appeal of the grievance may be taken to the Jail Administrator. *Id.*, ¶ VI. The ruling of the Jail Administrator is final and completes the administrative process. *Id.*, ¶ VI(D).

The OCDC grievance procedure expressly provides that a permanent log shall be maintained of all Requests to Staff submitted. The log shall note the receipt of the Request to Staff form, and the action taken in response to the Request to Staff must be documented. *Id.* [Doc. #12-3], ¶¶ III-IV. In addition, the grievance procedure provides that "All inmate 'Request to Staff' records shall be maintained in the inmate's file." *Id.*, ¶ VI. Similarly, the inmate grievance procedure provides that a log will be maintained for all grievances submitted, that each grievance must be assigned a number and that all grievances shall be forwarded to the Grievance Coordinator. *Id.* [Doc. #12-4], ¶ V. The Unit Manager is responsible for recording all Requests to Staff and grievances and the actions taken in response thereto. The Grievance Coordinator is responsible for maintaining a comprehensive

record of all formal grievances and must maintain a record of the disposition of each grievance for a period of five years. *Id.*, ¶ IX.

### 2. **Plaintiff's Grievance History at OCDC**

Defendants seek dismissal of the Complaint based on Plaintiff's failure to properly exhaust administrative remedies. Defendants state that Plaintiff untimely submitted a Request to Staff on July 15, 2007, thirty days after the date of the incident. Defendants state that Plaintiff further untimely submitted a Grievance on July 26, 2007, forty-one days after the incident. The Request to Staff and Grievance are attached to the Special Report. *See* Special Report [Doc. #20-2] at 20 (Inmate Grievance Form) and at 32 (Request to Staff).

In the Request to Staff dated July 15, 2007, Plaintiff states:

> I have wrote several grievance forms on this issue and filed a separate tee [sic] on Cpl. Brouchure [sic] and D.O. Schmidt and I have never got a response back when Cpl. Brouchure [sic] and D.O. Schmidt used unecessary [sic] force on me and I would like to press charges on both of them.

*See* Special Report at 32. Plaintiff attached his sworn statement describing the incident and a list of witnesses.

On the Inmate Grievance Form submitted on July 26, 2007, Plaintiff states that he was assaulted by two officers on June 15, 2007. In response to the question: "Did you submit a Request to Staff?" Plaintiff provided the following information:

> 6-16-07 Lt. Thomas [and] Cpl. Whitehorn[;] on 6-18-07 Lt. White and yes I submitted a request to staff and I never received anything back or an answer[.]

*See* Special Report at 20.

In responding to Defendants' Motion, Plaintiff states that he never received responses to the grievances submitted.[4] The Request to Staff and Inmate Grievance relied upon by Defendants support Plaintiff's allegation. Moreover, none of the evidence submitted by Defendants demonstrates that Plaintiff ever received responses to his informal and formal attempts to exhaust administrative remedies. Critically missing from Defendant's evidentiary materials is an affidavit from either the Unit Manager or Grievance Coordinator regarding the log of requests to staff or grievances during the relevant time frame or documentation of the action taken in response to the Request to Staff and Grievance submitted by Plaintiff whether timely or not. A failure to respond to a grievance may be grounds for finding that an administrative remedy is unavailable, *see Jernigan*, 304 F.3d at 1032, or if prison officials fail to respond within the time limits provided by the grievance procedure the prisoner may be deemed to have exhausted available administrative remedies, *see Whitington v. Ortiz*, 472 F.3d 804, 807-808 (10th Cir. 2007). Based on the record before the Court, disputed issues of material facts exist that preclude summary judgment in favor of Defendants Bouchard and Schmidt for Plaintiff's alleged failure to exhaust administrative remedies regarding their use of force on June 15, 2007.

Defendants further argue that Plaintiff did not submit any request to staff or grievance setting forth claims or allegations against Sheriff Whetsel. As stated above, in Counts II and

---

[4] Plaintiff further alleges he mailed a grievance form to his mother, Helen Petties, and asked her to mail the grievance to Sheriff Whetsel. *See* Plaintiff's Response [Doc. #16] at 3-4; *see also* Complaint [Doc. #1] at 6. Plaintiff does not state when he mailed the grievance or whether his mother ever mailed the grievance to Defendant Whetsel.

III of the Complaint, Plaintiff asserts a failure to supervise claim against Defendant Whetsel. *See Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir.1988) (holding that allegations that a sheriff customarily failed to properly supervise his deputies, that he was deliberately indifferent to plaintiff's constitutional rights, and that at least three of his deputies participated in assault on prisoner, were sufficient to allege § 1983 claims against the sheriff in his individual capacity for failure to train and supervise deputies); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). There is no evidence in the record that Plaintiff attempted to exhaust administrative remedies with respect to the Sheriff's alleged failure to supervise Defendants Bouchard and Schmidt. Because a failure to supervise claim is a distinct and separate claim from the excessive force claim Plaintiff brings against Defendants Schmidt and Bouchard, Plaintiff's efforts towards exhausting the excessive force claim are insufficient to satisfy the exhaustion requirement as to the failure to supervise claim. *Compare Kikumura v. Osagie*, 461 F.3d 1269, 1285-1286 (10th Cir. 2006) (finding inmate exhausted claims involving denial of medical treatment but failed to exhaust claims against supervisory personnel for providing inadequate training and discipline to the prison staff that had allegedly led to the underlying violations), *overruled on other grounds*, *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008). Accordingly, Defendants' Motion should be granted as to the failure to supervise claims raised in the Complaint against

Defendant Whetsel on grounds that Plaintiff has failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).[5]

## B. Eighth Amendment Claims Against Defendants Bouchard and Schmidt -- Counts I[6] and II

On June 15, 2007, Defendant Bouchard and a detention officer, Corporal Woodruff, conducted a search of Plaintiff's cell.[7] The officers allege that they found a metal object in Plaintiff's cell which they believed could be used as a weapon. Plaintiff denies that the metal object was in his cell.[8] The officers then proceeded to handcuff Plaintiff at which time Plaintiff advised them to be careful because he had a broken wrist.[9]

---

[5] Based on the recommended dismissal of Plaintiff's claims against Sheriff Whetsel for failure to exhaust administrative remedies, the Court does not address Defendant Whetsel's alternative argument that Plaintiff has failed to allege facts sufficient to demonstrate his personal participation in the alleged violation of Plaintiff's constitutional rights.

[6] In Count I of the Complaint, Plaintiff alleges he was not treated with "respect and dignity" and that his life was threatened. Plaintiff does not identify the constitutional basis for this claim. However, in support of this claim, Plaintiff relies upon the alleged use of excessive force by Defendants Bouchard and Schmidt on June 15, 2007. Therefore, Plaintiff's claim in Count I of the Complaint is construed to allege a violation of his Eighth Amendment rights and, as such, is addressed jointly with the claim raised in Count II of the Complaint.

[7] Corporal Woodruff is not named as a defendant in this action.

[8] Plaintiff alleges he never received a misconduct for having a metal object in his cell. *See* Plaintiff's Response [Doc. #22] at 4-5. The record does contain a misconduct report for the incident occurring on June 15, 2007, charging Plaintiff with "failure to obey a verbal and/or written order of staff member in prompt manner." *See* Special Report at 17. There is no indication as to whether Plaintiff was found guilty of the charge.

[9] Evidence of Plaintiff's claim of a broken wrist exists as early as May 6, 2007. *See* Special Report at 45-46 (report of cell search – "inmate Adams informed me that he had a broken wrist").The record also includes evidence that approximately one month after the incident, Plaintiff received authorization to have a removable splint for a fracture of his right wrist. *See* Special Report at 64. The record contains no explanation for the cause of this fracture. However, in the Complaint,
(continued...)

Plaintiff's version of the ensuing events is taken from his Complaint signed under penalty of perjury and a notarized affidavit of Plaintiff contained in the Special Report. *See* Complaint at 3-4; Special Report at 33-35. According to Plaintiff, he asked to see the metal object allegedly found in his cell and was ordered to face the wall of his cell. Plaintiff states that as he began to comply with this order, Defendant Bouchard grabbed him and threw him into the wall while Defendant Schmidt pulled his arms up. Plaintiff reminded Defendants of his broken wrist at which time he alleges Defendant Bouchard grabbed him by the throat and choked him so hard that he could not breathe. Plaintiff next claims Defendant Bouchard tried to push him down the stairs. Defendant Schmidt then grabbed Plaintiff by the right arm, and Defendant Bouchard took Plaintiff's other arm and walked him down the stairs. Next, Plaintiff claims Defendant Bouchard rammed his head into the door of the sally port and then both Defendants slammed him to the ground. The Defendants then picked him up and took him to the elevator. Defendants slammed him against the back of the elevator while being transported to the medical unit. When he arrived at the medical unit, Plaintiff alleges Defendant Bouchard hit him on the left side of the face.[10]

---

[9](...continued)
Plaintiff seeks damages for "pain and suffering" alleging that as a result of the June 15, 2007 incident, he has to have surgery on his wrist "again." *See* Complaint at 6.

The record also contains evidence that Plaintiff had a brace for his arm. It appears this brace was provided to Plaintiff following a surgery some time prior to May 11, 2007. *See* Special Report at 49.

[10]An undated form headed "Problem Oriented Record" documents a complaint of excessive force involving Plaintiff and lists under "Injuries noted": mild redness, left side near left ear. *See* Special Report at 65.

Defendants' contrary version of the events is set forth in the incident reports included in the Special Report. *See* Special Report [Doc. #20-2] at 9-11. These incident reports state that after Defendant Bouchard handcuffed Plaintiff, Plaintiff refused to comply with requests to face the wall of his cell, made verbal threats against the officers and flexed his muscles. Defendants claim that the handcuffs were "eased" onto Plaintiff to prevent further injury to his wrist, but that Plaintiff began to complain that the officers had broken his wrist. As a consequence, Defendant Bouchard asked Defendant Schmidt to assist him in escorting Plaintiff to the clinic for an evaluation. While Plaintiff was being escorted to the medical clinic, he continued to struggle with the officers causing them to nearly fall down the stairs. Once Plaintiff was taken to the elevator, he was restrained against the wall of the elevator. At the clinic, Plaintiff started kicking and had to be held down. The nurse cleared Plaintiff, finding he had suffered no injuries.

In Plaintiff's response to the Special Report, Plaintiff denies the accuracy of the incident reports. He denies posing any kind of threat or disobeying or resisting the officers. Instead, he says that Defendant Bouchard got upset with him when he asked to see the metal object. He states that while he was handcuffed, Defendants choked him, threatened to throw him down the stairs, twisted his wrist, ran his head into the sally port slider, ran him into the back wall of the elevator and hit him on the left side of his face with a closed fist. Plaintiff notes that although he was written up for not promptly obeying an order, he was not written up for resisting or threatening the officers or for having any metal object in his cell. In short, Plaintiff's factual allegations directly contradict the factual recitations in the incident reports

regarding the circumstances and extent of the officers' use of force and their motivation for the use of force.

The "core judicial inquiry" in a case involving a prisoner's allegation that prison guards used excessive force in violation of the Eighth Amendment's prohibition against the unnecessary and wanton infliction of pain is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Whitley v. Albers*, 475 U.S. 312, 320-321 (1986).

To determine whether the use of force "could plausibly have been thought necessary" or instead was "wanton and unnecessary" factors the Court may consider include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officers on the basis of facts known to them; and (4) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 320-321. In addition, the extent of injury suffered by the inmate is a factor to consider, but "[t]he absence of serious injury. . . does not end [the Eighth Amendment inquiry]." *Hudson*, 503 U.S. at 8. Excessive force resulting in "bruises, swelling, loosened teeth, and a cracked dental place, are not *de minimis* for Eighth Amendment purposes." *Id*. at 10. With respect to the injury requirement, the Tenth Circuit has held:

> [T]he degree of injury may be highly relevant to the determination of the unreasonableness of the force used. But we decline to adopt a rule today,

>which we believe would be inconsistent with *Hudson*, that permits an officer to beat an inmate so long as the resulting injuries are neither permanent nor require medical attention.

*United States v. LaVallee*, 439 F.3d 670, 688 (10th Cir. 2006).

Disputed facts militate against granting summary judgment to Defendants Bouchard and Schmidt. Both the need for the application of force and the extent of the threat to safety of staff and inmates are disputed in this case when the facts and the inferences from those facts are taken in the light most favorable to Plaintiff. According to Plaintiff, he was not resisting the officers or refusing to comply with orders when they began and continued to assault him. Further, although the Special Report includes documents indicating that Plaintiff had been disruptive on previous occasions, different officers were involved. There is no evidence that Defendants Bouchard and Schmidt had prior knowledge of these incidents involving Plaintiff and, therefore, that they were taking pre-emptive measures to prevent Plaintiff from creating a significant threat to the safety of the officers and inmates. As to the injuries suffered by Plaintiff, at a minimum, when the facts and inferences are viewed in the light most favorable to Plaintiff, Defendants aggravated Plaintiff's fractured wrist during the course of this incident.

The Court recognizes that not "every malevolent touch by a prison guard gives rise to a federal cause of action" and not "every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Hudson*, 503 U.S. at 9. Here, however, Plaintiff's allegations show more than a push or

shove. The evidence, viewed in the light most favorable to Plaintiff, does not rule out an inference of wantonness in the infliction of pain.

In making this recommendation, the Court must comment on the quality of Defendants' support for their motion for summary judgment. Defendants' supporting documentation is based entirely on records from the OCDC submitted with the Special Report. Under Tenth Circuit precedent, the Special Report may be treated as an affidavit. *Hall v. Bellmon*, *supra*, 935 F.2d at 1111. The Court, however, "is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Id*. Plaintiff's Complaint is accompanied by a declaration made under penalty of perjury, *see* 28 U.S.C. § 1746, and therefore, may be treated as an affidavit. *Hall*, 935 F.2d at 1111. Plaintiff's verified statements in the Complaint, Plaintiff's notarized affidavit contained in the Special Report and Plaintiff's response to the Special Report create factual disputes and preclude exclusive reliance on the factual determinations made in the Special Report. *Compare Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (reversing district court's grant of summary judgment on prisoner's excessive force claim where district court relied on factual determinations made in Special Report but such factual allegations were disputed by verified statements of the prisoner set forth in the complaint).

Defendants have failed to submit in support of their summary judgment motion any affidavit or other sworn testimony to authenticate the records contained in the Special Report or any other affidavit from an individual claiming personal knowledge of the information contained in these records or of the June 15, 2007, incident. Critically absent from

Defendants' summary judgment record is an affidavit or declaration made under penalty of perjury from either Defendant Bouchard or Defendant Schmidt. The incident reports prepared by these officers would not be admissible at trial unless properly authenticated. Moreover, the reports contain inadmissible hearsay. While at the summary judgment stage evidence need not be submitted in a form that would be admissible at trial, "[n]onetheless the content or substance of the evidence must be admissible." *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

Under these circumstances, Defendants Bouchard and Schmidt clearly have not met their burden of proof to support summary judgment in their favor.

### C. **Qualified Immunity**

Defendants have also moved for summary judgment on grounds of qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation" if the complained of behavior did not violate clearly established law. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an immunity from suit rather than a mere defense to liability and "is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526. Recently, in *Scott v. Harris*, __ U.S.__, 127 S.Ct. 1769, 1774 (2007), the United States Supreme Court revisited the proper analysis to be undertaken once the defense of qualified immunity is raised:

> In resolving questions of qualified immunity, courts are required to resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If, and only if, the court finds a violation of a

>   constitutional right, "the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case." *Ibid*. Although this ordering contradicts "[o]ur policy of avoiding unnecessary adjudication of constitutional issues," *United States v. Treasury Employees*, 513 U.S. 454, 478 (1995) (*citing Ashwander v. TVA*, 297 U.S. 388, 346-347 (1936) (Brandeis, J., concurring)), we have said that such a departure from practice is "necessary to set forth principles which will become the basis for a [future] holding that a right is clearly established." *Saucier*, *supra*, at 201.

*Scott*, 127 S.Ct. at 1774. When considering the defense of qualified immunity in the context of a summary judgment motion, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" and, as here, "this usually means adopting . . . the plaintiff's version of the facts." *Id*. at 1774-1775.

Based on the analysis of Plaintiff's Eighth Amendment claim set forth above, Plaintiff has met his burden of establishing the first element required to defeat the qualified immunity defense -- at least based on the record presently before the Court. Taking the facts in the light most favorable to Plaintiff and drawing all reasonable inferences therefrom, Plaintiff has shown conduct that would violate his constitutional right to be free from excessive force.

With respect to the second part of the inquiry, it was clearly established in June 2007 that prison officials cannot inflict injury where they act, not in a good faith effort to maintain and restore discipline, but maliciously and sadistically for the very purpose of causing harm. *See Hudson v. McMillian*, 503 U.S. 1 (1992); *Whitley v. Albers*, 475 U.S. 312 (1986). Therefore, it is recommended that the motion for summary judgment on the basis of qualified immunity be denied as to Defendants Bouchard and Schmidt.

**RECOMMENDATION**

For the reasons set forth below, it is recommended that Defendants' Motion [Doc. #12], construed as a motion for summary judgment, be granted in part and denied in part. It is recommended that the motion be granted as to Plaintiff's failure to supervise claims against Defendant Whetsel on the ground that Plaintiff has failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) and that the claims against Defendant Whetsel be dismissed without prejudice. It is recommended that the motion be denied as to the remaining Eighth Amendment claims against Defendants Bouchard and Schmidt.

**NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to file an objection to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objections must be filed with the Clerk of this Court by August  7th , 2008. *See* Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

**STATUS OF REFERRAL**

This Report and Recommendation disposes of all issues referred by the District Judge in this matter and terminates the referral.

ENTERED this __18th__ day of July, 2008.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE